**Ruth WARNER, Appellant,**

v.

**Joseph A. CALIFANO, Jr., Secretary, Health, Education and Welfare, Appellee.**

**No. 79-1567.**

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 12, 1980.

Decided June 18, 1980.

Richard Jarboe, Ponder & Jarboe, Walnut Ridge, Ark., for appellant.

Verrell L. Dethloff, Jr., Atty., Dept. of Health, Education and Welfare, Baltimore, Md., argued, for appellee; Andrew E. Wakshul, Baltimore, Md., Alice Daniel, Acting Asst. Atty. Gen., Washington, D. C., William H. Dillahunty (former U. S. Atty.), and Richard M. Pence, Jr., Asst. U. S. Atty., Little Rock, Ark., on brief.

Before LAY, Chief Judge, and BRIGHT and HENLEY, Circuit Judges.

LAY, Chief Judge.

The district court granted summary judgment in favor of the Secretary of Health, Education and Welfare, upholding his denial of social security benefits to Ruth Warner. Claimant appeals from the judgment of the district court. We reverse and remand to the Secretary for further hearing.

Ruth Warner suffers from osteoporosis and osteoarthritis. At the time of the administrative law judge's (ALJ) decision she had not engaged in gainful employment for over two years.[1] At the time of the hearing she was 46 years old.

record was not fully and fairly developed. See Sellars v. Secretary, 458 F.2d 984 (8th Cir. 1972).

1. The hearing was held April 7, 1976. The appeals council upheld the ALJ's denial of benefits on July 30, 1976. On May 30, 1979, the district court granted the summary judgment. It is unfortunate that it required three years for

claimant to obtain a review of the Secretary's decision. It is imperative that social security disability cases be reviewed on an expedited basis. Unfortunately, due to the shortage of judges and the large backlog of cases in the Eastern District of Arkansas during this period of time, this could not be accomplished here.

Warner has only an eighth grade education and possesses no special skills or training. Her last job was in a school lunch room for approximately 14 years preparing food, cleaning, and mopping the floor. She worked in a supervisory capacity the last three years. She was forced to quit work because of her inability to cope with the pain.

On August 1, 1975, a consulting orthopedic surgeon found:

Ms. Warner is capable of performing activities which require sitting but with the ability to stand and move about at regular intervals. She is unable to perform any activities requiring frequent bending, stooping, lifting, or straining. She would also have difficulty with weights of greater than 10–15 pounds. She would not be able to perform any activities requiring either prolonged standing or prolonged sitting but should be able to perform activities which require sitting with the opportunity to stand and move about at regular intervals.

In denying benefits the ALJ found:

[C]laimant is impaired by mild osteoarthritis and menopausal osteoporosis with attendant pain and headaches, which functionally limit her activities to the extent that she cannot do her last work as a lunchroom supervisor and worker, but is not of a severity nor is she functionally limited in activities to the extent that she is precluded from her former lighter work of a similar nature in a coffee shop. Nor has the impairment been of such severity, due to a single condition or combination thereof, for any continuous period of 12 months or before the date of this decision.

■ We find no evidence in the record that would sustain a finding that claimant could perform as a worker in a short-order cafe.[2] The medical evidence is that she might be able to do light sedentary work. Her testimony is that she has so much pain that she cannot lift light objects, that it requires two hands to get a pitcher of tea from a refrigerator. She cannot use her hands to blow her hair dry; she has difficulty in dressing herself. She has severe pain in her arms and back. Her treating physician reported that claimant had pain as a result of her osteoarthritis and that occupational activities requiring heavy lifting, stooping, bending, reaching or prolonged activity with the neck held in a flexed position should be avoided.

■ When a claimant has shown disability which precludes returning to his or her regular work, the burden shifts to the Secretary to show that the claimant may engage in other gainful activity. Under these circumstances we think it fundamental that the ALJ base his judgment upon the testimony of a vocational witness. As we stated in *Johnson v. Richardson*, 486 F.2d 1023, 1025 (8th Cir. 1973):

It is true, as the district court recognizes, that the examiner, sitting as a trier of fact, may apply his experience and judgment in weighing the testimony of experts and draw fair and reasonable conclusions from the evidence. It is one thing for the examiner to infer that the overall evidence did not support the claimant's allegation of disability; however, it is another for the examiner to make that inference on his own determination that the claimant could serve in *a specific* vocation, when the only evidence in the record disputes it.

In view of the insufficient record, we remand to the Secretary for the taking of further evidence. In view of the unfortunate time lapse we find the Secretary should require current medical information relating to the claimant's period of insurability in order to assist the vocational expert in rendering an opinion.

The judgment is vacated and the cause is remanded to the district court with directions to remand the claim to the Secretary of Health, Education and Welfare for further proceedings.

**2.** We note in this regard, according to the ALJ's earlier decision, in which benefits were also denied, a vocational witness stated that working as a counter woman in a cafeteria would require prolonged standing. His testimony is not before us.