**Eloise RHINES, Appellant,**

v.

**Patricia HARRIS, Secretary, Health, Education and Welfare, Appellee.**

No. 79–2028.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 9, 1980.
Decided Nov. 12, 1980.

---

John L. Weyland, Minneapolis, Minn., for appellant.

Gabriel L. Imperato, Asst. Regional Atty., Chicago, Ill., for appellee.

Before LAY, Chief Judge, GIBSON, Senior Circuit Judge, and HEANEY, Circuit Judge.

FLOYD R. GIBSON, Senior Circuit Judge.

Plaintiff–appellant Eloise Rhines instituted this action for review of the final decision of the Secretary of the Department of Health, Education, and Welfare which disallowed Rhines's claim for disability insurance benefits. The District Court granted the Secretary's motion for summary judgment and thereby affirmed the Secretary's decision. Rhines has appealed.

Rhines is a woman in her early forties who has not worked since June 5, 1975. She testified that she has been unable to work since that time because of severe pain in her back, shoulders, arms, and right foot due to low back trouble. She filed her application for disability benefits, pursuant to 42 U.S.C. § 416 and 42 U.S.C. § 423, on January 24, 1978.[1]

The record discloses that Rhines has an eighth–grade education and reading ability on approximately a fifth–grade, nine–month level. Her work history prior to June 1975 consists of employment as an assembly worker, which involved extensive walking and standing, and as a maid in private homes. She last worked for Control Data Corp., as an assembler of computer chassis, where she sustained a back injury in the course of her employment.

Rhines testified that she is unable to sleep at night and often must get up to sit because of the pain in her back; that she wears a back brace regularly; that she undergoes physical therapy on a weekly basis; and that she takes medication to relieve her pain. She also testified that she is able to sit for forty–five minutes to one hour, stand for forty-five minutes to an hour, walk from two to three blocks, and lift up to ten or fifteen pounds.

The medical evidence pertaining to Rhines's back impairment consists of reports submitted by Dr. Robert Wengler, a board–certified orthopedic surgeon, and Dr. Benedict Trach, Rhines's personal physician. Rhines was examined three times by Dr. Wengler and at least twice by Dr. Trach in regard to her back condition.

Following the first examination of Rhines by Dr. Wengler on January 6, 1976, the doctor reported that in his opinion Rhines suffered from a low grade disc syndrome and was "totally disabled from gainful employment in any strenuous physical capacity." In April of the following year, when Rhines was examined again by Dr. Wengler because of pain in her right upper arm, the

---

1. Rhines filed a previous application to the same effect on January 26, 1976. She exhausted her administrative remedies but did not seek review of the Secretary's final decision which found that the claimant was not under a disability. Therefore, the decision on this prior application is not now before this court.

doctor concluded that Rhines had torn various fibers in the biceps belly of her arm but that the affected shoulder and elbow revealed a full range of motion. Dr. Wengler once again examined her on February 23, 1978. At this time, she complained of back and right leg pain. Dr. Wengler, finding a good range of motion of the spine and no neurological deficits, encouraged Rhines at this time to seek a light type of work activity.

Dr. Trach also reported on Rhines's condition. On February 5, 1976, he reported that she suffered from a twisted spine–pinched nerve. On January 31, 1978, when Trach again examined Rhines, he reported that she suffered moderate back pain; that limitation of range of motion of her back had been reduced by about twenty percent; that in an average work day claimant could sit, stand, or walk for six hours, frequently lift or carry up to fifty pounds, and use her hands or feet for repetitive actions; and that she could occasionally bend, squat, or crawl, and frequently climb and reach above the shoulder level. Approximately seven months later, on September 11, 1978, Dr. Trach wrote a letter in which he stated that Rhines "is unable to obtain any substantial gainful employment as a result of her disability." It is unclear from the record below whether Dr. Trach examined Rhines for a third time before submitting the above–mentioned letter, but it appears that in the doctor's opinion her condition had deteriorated since his report of January 1975.

In addition to the medical reports submitted in this case, a psychological evaluation conducted by a professional diagnostic service and a work evaluation prepared by Multi Resource Centers, Inc. were offered as evidence of Rhines's condition. The psychological evaluation, conducted on March 2, 1976, revealed that Rhines was "borderline retarded" and had a "solemn, almost preschizoid personality." She was characterized by the examiner as a multiply handicapped person who could conform to light competitive assembly work but had very limited occupational alternatives.

Multi Resource Centers, Inc. conducted its evaluation of Rhines from February 25, 1977, through March 1, 1977. It reported her to be of average ability in finger dexterity and eye–hand–foot coordination with good physical tolerance and work habits. Rhines demonstrated below average skills and only marginal training potential in the general clerical area. She was advised to consider a light assembly or packaging job in a factory setting.

A vocational expert, Jane K. Moncharsh, testified before the ALJ as to jobs which she believed to be within Rhines's abilities. Moncharsh was asked by the ALJ to assume that Rhines's testimony was true and accurate. In so doing, Moncharsh testified that appellant's need for physical therapy, her discomfort upon exposure to cold weather, her difficulty in sleeping, and her pain would militate against her being able to engage in competitive employment.

The report from Multi Resource Center, Inc. was not reviewed by Moncharsh, who arrived at her findings independently. The ALJ concluded that the report did not constitute new and material evidence. The court below accepted that conclusion and agreed that the report was supplemental.

A claimant has the burden of establishing the existence of her disability. *Wroblewski v. Califano,* 609 F.2d 908, 912 (8th Cir. 1979); *Stephens v. Secretary of HEW,* 603 F.2d 36, 41 (8th Cir. 1979). The burden to be met in establishing disability, as defined by 42 U.S.C. § 423(d)(1), requires the showing of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months, and which renders the individual unable to engage in any substantial gainful activity. Rhines here must establish that she is unable to perform her past occupation due to the medically determinable ailment.

As this court and other courts construing the Social Security Act have repeatedly held, once the claimant succeeds in establishing such inability, the burden shifts to the Secretary to show that there are other

types of work which the claimant is capable of doing. *Rosin v. Secretary of HEW,* 379 F.2d 189, 195 (9th Cir. 1967); *Davis v. Califano,* 605 F.2d 1067, 1071 (8th Cir. 1979); *Stephens v. Secretary of HEW, supra* at 41 (8th Cir. 1979). Proof must be based on a realistic evaluation of claimant's abilities in view of her age, education, training, work experience, and physical and mental capabilities. *Miracle v. Celebreeze,* 351 F.2d 361, 374 (6th Cir. 1965). *See, e.g., Ribicoff v. Hughes,* 295 F.2d 833, 837 (8th Cir. 1961); *Celebreeze v. Bolas,* 316 F.2d 498, 501 (8th Cir. 1963); *Brinker v. Weinberger,* 522 F.2d 13, 16–17 (8th Cir. 1975). Adequate proof cannot be based merely on the theoretical ability of claimant to perform some kind of work.

Once Rhines met her burden of establishing that she could no longer engage in her former occupation, it was incumbent upon the Secretary to show not only that Rhines could perform some type of work but also that employment opportunities existed for a woman who could do what Rhines has been found able to do. "Mere theoretical ability to engage in substantial gainful activity is not enough if no reasonable opportunity for this is available." *Celebreeze v. Bolas,* 316 F.2d 498, 501 (8th Cir. 1963), *quoting Kerner v. Flemming,* 283 F.2d 916, 921 (2d Cir. 1960).

The record reveals no substantial evidence to support the conclusion that employment opportunities exist for claimant Rhines in her present condition.

In *Miracle v. Celebreeze, supra* at 374, the court said:

> The criteria to be considered in determining a claimant's ability or inability to engage in substantial gainful activity, for purposes of determining his right to social security disability benefits, are objective medical facts, diagnoses, and expert medical opinions on subsidiary questions of fact, subjective evidence of pain and disability testified to by claimant, and claimant's educational background, work history and present age.

The medical evidence here clearly indicates that Rhines has suffered an injury to her spine. Dr. Wengler concluded that she is "totally disabled from gainful employment in any strenuous physical capacity," and it was Dr. Trach's opinion that she "is unable to obtain any substantial gainful employment as a result of her disability." These are the expert medical opinions of record.

The evidence presented to establish that Rhines suffers considerable pain reveals that she undergoes physical therapy on at least a weekly basis and that she regularly takes medication for pain and muscle relaxants. Rhines also has testified that she experiences severe and recurrent pain in her back, shoulders, arms, and right foot.

In addition to Rhines's physical handicaps, it has been shown that she has severe psychological handicaps which preclude several types of employment from being within her range of abilities.

As the court said in *Thomas v. Celebreeze,* 331 F.2d 541, 546 (4th Cir. 1965):

> Employers are concerned with substantial capacity, psychological stability, and steady attendance; they will not unduly risk increasing their health and liability insurance costs. It is unrealistic to think that they would hire anyone with the impairments of this claimant.

The Secretary need not find a specific job for a claimant. However, it must be shown that claimant can realistically perform in existing employment. *Brinker v. Weinberger, supra* at 18. The Secretary has failed to do so in this case.

We hold that claimant Rhines met her burden of proof and established that she was disabled within the meaning of the Social Security Act. The denial of disability benefits is not supported by substantial evidence in the record as a whole. Once claimant established that she was unable to perform her past occupation due to a medically determinable impairment or impairments, the burden shifted to the Secretary to establish that claimant could realistically engage in employment presently existing in the economy. The Secretary did not meet this burden.

We reverse the judgment of the District Court and remand the case with directions to grant summary judgment for plaintiff Rhines.

Costs assessed against appellee.