Nevada B. FRIZZELL, Plaintiff,

v.

Michael J. ASTRUE, Commissioner of Social Security, Defendant.

Civil Action No. 02–G–0505–NE.

United States District Court,
N.D. Alabama,
Northeastern Division.

April 26, 2007.

Darryl W. Hunt, Clark & James LLC, Birmingham, AL, for Plaintiff.

Lane H. Woodke, Alice H. Martin, U.S. Attorney, Edward Q. Ragland, U.S. Attorney's Office, Birmingham, AL, Roy F. Satterwhite, III, Stephen Thompson, Mary Ann Sloan, Social Security Administration–Office of General Counsel, Atlanta, GA, for Defendant.

## MEMORANDUM OPINION

GUIN, District Judge.

The plaintiff, Nevada B. Frizzell, brings this action pursuant to the provisions of section 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner of the Social Security Administration (the Commissioner) deny-

ing her application for Social Security benefits.

## PROCEDURAL HISTORY

Plaintiff initially filed her application for Social Security benefits in February, 2000, claiming disability from January 12, 1998, resulting from a 1995 on-the-job injury to her left wrist and thumb. On August 13, 2001, a hearing before Administrative Law Judge Jerry C. Shirley was held. In his December 28, 2001, decision, the ALJ found the Plaintiff has a combination of severe impairments, and that she is unable to perform her past relevant work. [R. at 111]. However, the ALJ found that the Plaintiff "has the residual functional capacity to perform a significant range of light work." [R. at 111]. The Plaintiff appealed this decision, and based on the Commissioner's Motion to Remand to conduct further evaluation of the medical evidence and Plaintiff's residual functional capacity, and to obtain supplemental evidence from a vocational expert [R. at 162], on June 13, 2002, this Court ordered the case be remanded for further proceedings. [R. at 160].

Meanwhile, on February 22, 2002, the Plaintiff filed a new disability claim [R. at 538–540], alleging disability based on the injury to her left wrist, modified radical mastectomy of the right breast with lymph node dissection following a cancer diagnosis with chemotherapy treatments, an abdominal mass and back pain [R. at 615]. This disability claim alleged the same onset date (January 12, 1998) contained in the original claim. The Plaintiff requested a hearing before an ALJ on July 19, 2002 [R. at 533], but the Appeals Council, acting on this Court's remand order, vacated the ALJ's decision, and ordered a new hearing be held [1], instructing that the Plaintiff's

---

1. The ALJ was unsure why the case had been remanded. "[Y]our case is back to me on remand by the District Court apparently

unopposed by the Commissioner, who exceeded [sic] to the motion by the—by you to have

new disability claim was to be consolidated with the previous claim [R. at 164–165A].

A second decision was issued by the ALJ on December 5, 2003, wherein he found that the Plaintiff *could* return to her past relevant work [R. at 40]. On July 28, 2005, the Appeals Council declined to review the ALJ's second decision [R. at 9–11], and, pursuant to that decision, the Plaintiff filed a new civil action on September 20, 2005. On June 8, 2006, this Court entered an order allowing the Plaintiff to proceed on her original complaint. As such, Plaintiff timely pursued and exhausted her administrative remedies available before the Commissioner. Accordingly, this case is now ripe for judicial review under 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

The sole function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Bloodsworth v. Heckler,* 703 F.2d 1233, 1239 (11th Cir.1983). To that end this court "must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth,* at 1239 (citations omitted). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Bloodsworth,* at 1239.

## STATUTORY AND REGULATORY FRAMEWORK

In order to qualify for disability benefits and to establish her entitlement for a period of disability, a claimant must be disabled. The Act defines disabled as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months...." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(I). For the purposes of establishing entitlement to disability benefits, physical or mental impairment is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

In determining whether a claimant is disabled, Social Security regulations outline a five-step sequential process. 20 C.F.R. § 404.1520(a)-(f). The Commissioner must determine in sequence:

(1) whether the claimant is currently employed;

(2) whether she has a severe impairment;

(3) whether her impairment meets or equals one listed by the Secretary;

(4) whether the claimant can perform her past work; and

(5) whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala,* 998 F.2d 473, 477 (7th Cir.1993); *accord McDaniel v. Bowen,* 800 F.2d 1026, 1030 (11th Cir.1986). "Once the claimant has satisfied Steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her past work, the burden shifts to the Secretary to show

this case remanded for a new hearing. And there's no statement in the remand as to why the case was remanded so I have no idea why the case was remanded so we'll just take a look at the records up—now to date .... so this hearing will be done somewhat like the case was done before." [R. 52].

that the claimant can perform some other job." *Pope* at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir.1995). The Commissioner further bears the burden of showing that such work exists in the national economy in significant numbers. *Id.*

In the instant case, ALJ Jerry C. Shirley determined the Plaintiff met the first two tests, but concluded that while she has an impairment or combination of impairments considered "severe," she did not suffer from a listed impairment. In his decision, the ALJ found that the Plaintiff's allegations regarding her functional limitations, including pain, are not totally credible. The ALJ found the Plaintiff "has the residual functional capacity to perform a limited range of light work activity," [R. at 39], and therefore, was not prevented from performing her past relevant work as a bookkeeper/accounting clerk. Accordingly, the ALJ found the Plaintiff not to be disabled.

## WHEN THE CLAIMANT HAS MULTIPLE IMPAIRMENTS

When a claimant has multiple impairments they must be considered in combination.

[A] claim for social security benefits based on disability may lie even though none of the impairments, considered individually, is disabling. In such instances, it is the duty of the administrative law judge to make specific and well-articulated findings as to the effect of the combination of impairments and to decide whether the combined impairments cause the claimant to be disabled.

*Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir.1984).

## THE STANDARD WHEN THE CLAIMANT TESTIFIES SHE SUFFERS FROM DISABLING PAIN

In this circuit, "a three part 'pain standard' [is applied] when a claimant seeks to establish disability through his or her own testimony of pain or other subjective symptoms." *Foote*, at 1560.

The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Foote*, at 1560 (quoting *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir.1991)). In this circuit medical evidence of pain itself, or of its intensity, is not required.

While both the regulations and the *Hand* standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, *neither requires objective proof of the pain itself.* Thus under both the regulations and the first (objectively identifiable condition) and third (reasonably expected to cause pain alleged) parts of the *Hand* standard *a claimant who can show that his condition could reasonably be expected to give rise to the pain he alleges has established a claim of disability and is not required to produce additional, objective proof of the pain itself.* See 20 CFR §§ 404.1529 and 416.929; *Hale* at 1011.

*Elam v. Railroad Retirement Bd.*, 921 F.2d 1210, 1215 (11th Cir.1991) (parenthetical information omitted) (emphasis added). Furthermore, it must be kept in mind that "[a] claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability." *Foote* at 1561. Therefore, if a claimant testifies to disabling pain and satisfies the three part pain standard, she must be found disabled unless that testimony is properly discredited.

■ When the Commissioner fails to credit a claimant's pain testimony, he must articulate reasons for that decision.

It is established in this circuit that if the Secretary fails to articulate reasons for refusing to credit a claimant's subjective pain testimony, then the Secretary, as a matter of law, has accepted that testimony as true. Implicit in this rule is the requirement that such articulation of reasons by the Secretary be supported by substantial evidence.

*Hale v. Bowen*, 831 F.2d 1007, 1012 (11th Cir.1987). Therefore, if the ALJ either fails to articulate reasons for refusing to credit the plaintiff's pain testimony, or if his reasons are not supported by substantial evidence, the pain testimony of the plaintiff must be accepted as true.

### DISCUSSION

The presence of pain supports a finding of disability. The ALJ found that the plaintiff has the following impairments:

The medical evidence indicates that the claimant has status post left scaphoid fracture with open reduction and fusion (1995), status post left carpal tunnel release surgery (1998), status post right modified radical mastectomy with lymph node dissection secondary to carcinoma, status post chemotherapy, status post a[sic] left simple mastectomy (August 2001), an abdominal mass, degenerative disc disease of the cervical spine, a depressive disorder not otherwise specified, an anxiety disorder, and chronic nicotine abuse....

[R. 31].

■ The ALJ correctly found that the plaintiff has an underlying medical "condition, or combination of conditions, which could reasonably be expected to produce the level of pain or other symptoms which the plaintiff alleges precludes her from working...." [R. 33]. However, his finding that "the plaintiff's allegations regarding her limitations are not totally credible," [R. 39], is not supported by substantial evidence.

The plaintiff testified that she has pain in her left wrist [R. 62], and that she "kept having problems with [her] left arm after the mastectomy." [R. 56]. She testified that she has three bulging discs[2] in the upper part of her neck that affect the nerves in her left arm. [R. 56]. As for the effect of the right modified radical mastectomy with lymph node dissection, the plaintiff testified that her hand swells, and that she has weakness in her shoulder and under her arm, and that the swelling is worse after use of her hand and arm. [R. 68]. She testified that the abdominal mass is "very painful." [R. 69].

The ALJ found that the plaintiff's pain allegations are inconsistent with her daily activities. [R. 33]. The ALJ relies on Exhibit 2E, [R. 184–189], to support this contention. However, a review of Exhibit 2E, which is a Disability Determination Service Daily Activities Questionnaire, reveals the following: the plaintiff fixes breakfast, dresses herself and watches television; she needs help braiding her hair; she cooks meals and shops, but needs help carrying packages or groceries; she can perform light cleaning, dusting and clothes washing, but her husband or relatives perform major cleaning; and on Sundays, she goes to church. [R. 184–187]. These activities are consistent with those the plaintiff testified to at the administrative hearing. [R. 54–55].

---

**2.** A cervical spine MRI ordered by her treating physician, Lawrence V. Baker, M.D., and performed December 12, 2002, indicates desiccation and interspace narrowing at C3–4, C4–5 and C5–6 and a broad-based central disc protrusion impressing the anterior surface of the thecal sac. [R. 744–745].

These reported activities of daily living do not rule out the presence of disabling pain. The ability to watch television, do occasional shopping, or perform other sporadic activities does not mean the plaintiff is not disabled. In this circuit it has been recognized that "participation in everyday activities of short duration, such as housework or fishing," does not disqualify a claimant from disability. *Lewis v. Callahan,* 125 F.3d 1436, 1441 (11th Cir.1997). As has been noted:

> [S]tatutory disability does not mean that a claimant must be a quadriplegic or an amputee. Similarly, shopping for the necessities of life is not a negation of disability and even two sporadic occurrences such as hunting might indicate merely that the claimant was partially functional on two days. *Disability does not mean that a claimant must vegetate in a dark room excluded from all forms of human and social activity* .... It is well established that sporadic or transitory activity does not disprove disability.

*Smith v. Califano,* 637 F.2d 968, 971–72 (3rd Cir.1981) (emphasis added). It is the ability to engage in gainful employment that is the key, not whether a plaintiff can perform minor household chores or drive short distances. In *Easter v. Bowen,* the court observed as follows:

> Moreover, an applicant need not be completely bedridden or unable to perform any household chores to be considered disabled. *See Yawitz v. Weinberger,* 498 F.2d 956, 960 (8th Cir.1974). What counts is the ability to perform as required on a daily basis in the "sometimes competitive and stressful" environment of the working world. *Douglas v. Bowen,* 836 F.2d 392, 396 (8th Cir.1987) (quoting *McCoy v. Schweiker,* 683 F.2d 1138, 1147 (8th Cir.1982) (en banc)).

867 F.2d 1128, 1130 (8th Cir.1989). The *Easter* court further noted that "[e]mployers are concerned with substantial capaci-

ty, psychological stability, and steady attendance...." 867 F.2d at 1130 (quoting *Rhines v. Harris,* 634 F.2d 1076, 1079 (8th Cir.1980)).

With this standard in mind, it is clear that the ALJ has not articulated a sound reason for rejecting the plaintiff's pain testimony solely based on her recitation of daily activities. Therefore, the ALJ failed to satisfy the requirements of *Hale.* The conclusion of that court is equally appropriate in the instant case. "[T]he Secretary has articulated reasons for refusing to credit the claimant's pain testimony, but none of these reasons is supported by substantial evidence. It follows, therefore, that claimant's pain testimony has been accepted as true." *Hale,* at 1012.

Moreover, a "longitudinal history of complaints and attempts at relief" supports the plaintiff's pain allegations. *See* SSR 96–7P 1996 WL 374186 at *7 ("In general, a longitudinal medical record demonstrating an individual's attempts to seek medical treatment for pain or other symptoms and to follow that treatment once it is prescribed lends support to an individual's allegations of intense or persistent pain or other symptoms for the purposes of judging the credibility of the individual's statements.") From August 2000 to October 2002, the plaintiff's treating physician, Lawrence V. Baker, M.D., regularly prescribed Lortab 7.5 (one tablet every four to six hours as needed) and Motrin 800 milligram (one tablet three times per day) for pain. [R. 645, 649, 650, 653, 655, 657, 661, 664, 705, 709, 724].

■ The ALJ's finding that "the records clearly indicate that the claimant has reported that her symptoms are intermittent in nature and that she only occasionally requires the use of prescription pain medication" [R. 36] is not supported by substantial evidence. It is clear from a review of Dr. Baker's treatment notes that

the plaintiff was returning for post-cancer surgery follow-up visits, some of which were one-month intervals, and some of which were three-month intervals. At any rate, Dr. Baker prescribed these narcotic and anti-inflammatory pain medications with multiple refills. As the Commissioner's refusal to credit the plaintiff's pain on these treatment records is not supported by substantial evidence, the plaintiff's pain testimony must be accepted as true. *Hale,* at 1012.

At the administrative hearing, the plaintiff's attorney examined the vocational expert. His testimony was as follows:

Q: All right. Now, if she had pain that's, I believe, at least a moderately severe degree, as she's testified, if I understand that pain, even with medication, is, perhaps, a five or a six, and that without medication, I assumed it's going to be higher than that and the necessity of using a TENS unit on one of these hands, how, from a vocational standpoint, would that affect her ability to do the kind of work you're talking about, the sedentary, clerical work?

A: Well, if her pain goes up higher than a six, we're getting in to the moderately [sic] level. But if it's able to be kept under control to a moderate level, with medications, as long as there were no side effects of medications, then—

Q: Okay.

A:—that is moderate pain.

Q: Would [she] be able—and if she has, due to the pain, the necessity of lying down three or four [hours] a day[3]—

A: Then she could not—

Q:—would she be able to work?

A:—work. No.

[R. 86–87].

■ Therefore, the Commissioner's finding that the plaintiff's residual functional capacity did not preclude her past relevant work as a bookkeeper/accounting clerk is not supported by substantial evidence.

■ This is a case where "the [Commissioner] has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt." *Davis v. Shalala,* 985 F.2d 528, 534 (11th Cir.1993). In such a case the action should be reversed and remanded with instructions that the plaintiff be awarded the benefits claimed. *Id.*

### CONCLUSION

Based upon the cumulative effect of the plaintiff's impairments, the pain testimony of the plaintiff, and upon the expert vocational testimony at the ALJ hearing, the plaintiff is unable to perform any work activity. Therefore, the plaintiff is disabled within the meaning of the Social Security Act. An appropriate order remanding the action with instructions that the plaintiff be awarded the benefits claimed will be entered contemporaneously herewith.

### *FINAL ORDER*

In conformity with and pursuant to the memorandum opinion entered contemporaneously herewith, it is

ORDERED, ADJUDGED and DECREED that the decision of the Commissioner of the Social Security Administration is hereby REVERSED, and the case is REMANDED to the Commissioner with

---

**3.** The plaintiff had previously testified that she has to lie down at least half of the day be-

cause of pain and side effects of medication. [R. 70].

instructions that the plaintiff be awarded the benefits claimed. It is

FURTHER ORDERED that the Commissioner withhold from payments that are determined to be due the plaintiff under this order an amount not to exceed 25 percent of the total amount of disability benefits to which the plaintiff is entitled, pursuant to the provisions of 42 U.S.C. § 406(b). The Commissioners directed to advise the court of the amount withheld so that the matter may be set for final determination of the amount of attorney's fee to be allowed plaintiff's Counsel for services rendered in representing plaintiff in this cause.

It is further ORDERED pursuant to Rule 54(d)(2)(B) of the Federal Rules of Civil Procedure, that plaintiff's attorney is hereby granted an extension of time in which to file a petition for authorization of attorney's fees under 42 U.S.C. § 406(b) until thirty (30) days subsequent to the receipt of a notice of award of benefits from the Social Security Administration. ***This order does not extend the time limits for filing a motion for attorney's fees under the Equal Access to Justice Act.***